1
2
3
4
5
6
7

8       **UNITED STATES DISTRICT COURT**

9       **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  THE OHIO CASUALTY INSURANCE          Case No. 22-cv-535-MMA (KSC)
    COMPANY,
12                                       **ORDER GRANTING IN PART AND**
                              Plaintiff,  **DENYING IN PART PLAINTIFF'S**
13                                       **MOTION FOR SUMMARY**
    v.                                   **JUDGMENT OR, IN THE**
14                                       **ALTERNATIVE, MOTION FOR**
    SUPERIOR AIR, INC., et al.,          **PARTIAL SUMMARY JUDGMENT**
15
                              Defendants. [Doc. No. 25]
16
17
18

19      This is an indemnity action brought by Plaintiff The Ohio Casualty Insurance

20  Company ("Plaintiff" or "Ohio Casualty") against Defendants Superior Air, Inc. ("SAI"),

21  Vinod Jothilingam, and Vandana Ahuja (collectively, "Defendants").  Doc. No. 1

22  ("Compl.").  Presently before the Court is Plaintiff's motion for summary judgment or, in

23  the alternative, partial summary judgment.  Doc. No. 25.  Plaintiff seeks indemnity and

24  collateral security for losses and expenses it incurred, and may incur in the future, in

25  investigating and resolving claims under construction-related surety bonds it issued and

26  in enforcing its rights under an indemnity agreement.  *Id.*  Defendants filed an opposition,

27  Doc. No. 27, to which Plaintiff replied, Doc. No. 28.  The Court found the matter suitable

28  for determination on the papers and without oral argument pursuant to Federal Rule of

Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 29.  For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion.

## I. BACKGROUND[1]

Except where otherwise noted, the following facts are not reasonably in dispute.[2] Defendants executed a General Agreement of Indemnity ("Indemnity Agreement") in favor of Ohio Casualty as partial consideration for Ohio Casualty's issuance of surety bonds on behalf of SAI.[3]  Doc. No. 28-1 ("Plaintiff's Separate Statement" or "PSS") No. 2; Doc. No. 25-2, Decl. of Sonia Linnaus in Supp. of Mot. Summ. J. ("Linnaus Decl.") ¶ 7; Doc. No. 25-2, Ex. A ("Agreement") at 18–22.[4]  By executing the Indemnity Agreement, Defendants agreed to indemnify and hold harmless Ohio Casualty from any liability, costs, and expenses arising from Defendants' default on their obligations under bonds issued by Ohio Casualty.  PSS at Nos. 4–5; Agreement ¶¶ 1, 4.  The Indemnity Agreement entitles Ohio Casualty to recover "all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements, whether or not such

---

[1] These material facts are taken from the parties' separate statements and responses thereto, as well as the supporting declarations and exhibits.  Disputed material facts are discussed in further detail where relevant to the Court's analysis.  Facts that are immaterial for purposes of resolving the current motions are not included in this recitation.

[2] In opposition, Defendants dispute many of Plaintiff's statements of fact.  *See* Doc. No. 27-4.  However, many of Defendants' explanations are largely irrelevant.  For example, in response to the statement "The Indemnity Agreement defines 'Loss' as: 'Any loss, fees, costs and expenses, including pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering and outside consulting fees, which [OCIC] may sustain or incur. . . ,'" Defendants state, "Disputed.  The bracketed language is interpolated."  PSS at No. 5.  This is not a valid basis for disputing the fact.  The bracketed language "[OCIC]" stands for "Ohio Casualty" and replaces the word "Surety" in the Indemnity Agreement.  *See* Doc. No. 25-2 at 15 ¶ 1.  Defendants do not dispute that Ohio Casualty is the surety in this case and the surety referenced in the Indemnity Agreement.  To the extent Defendants purport to dispute a fact but do not provide a relevant basis for doing so, the Court treats the fact as undisputed.

[3] The Indemnity Agreement is in the name of Ohio Casualty's parent company, Liberty Mutual Group. *See* Agreement at 14.  SAI executed the agreement on April 15, 2020.  *Id.* at 18.  Jothiligam and Ahuja executed the agreement on May 28, 2020.  *Id.* at 19–22.

[4] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

liability, necessity, or expediency existed," including "pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering and outside consulting fees" by reason of:

> (a) a request for a Bond; (b) execution or procurement of a Bond, including any cost incurred by [Ohio Casualty] in fulfilling its obligations under any Bond; (c) the failure of [Defendants] to comply with any covenants or conditions of [the] Agreement . . . ; or (d) in enforcing any conditions of [the] Agreement.

PSS at Nos. 4–5; Agreement ¶¶ 1, 4. The Indemnity Agreement further provides that "vouchers or other evidence of any such payments shall be prima facie evidence of the fact and amount of liability to [Ohio Casualty]." PSS at No. 4; Agreement ¶ 4. Ohio Casualty has the right under the Indemnity Agreement, at "its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any Bond." Agreement ¶ 8. In addition, the Indemnity Agreement also provides that Defendants must deposit collateral on demand by Ohio Casualty, in an amount to be determined by Ohio Casualty, for anticipated losses, even if no losses have yet been sustained. *Id.* ¶ 5. Upon default or breach by Defendants, Ohio Casualty may take over any bonded projects and recover all expenses incurred carrying them to completion. *Id.* ¶ 8.

Defendants entered into the Indemnity Agreement to obtain bonds from Ohio Casualty securing SAI's work on various projects (the "Bonded Projects"). PSS at No. 7; Linnaus Decl. ¶ 12. Ohio Casualty, acting as surety, issued the following bonds on behalf of SAI as principal for various construction projects: (1) a performance and payment bond in the penal amount of $1,551,739.00 for the Lindbergh Elementary School Modernization Project ("Lindbergh Project"); (2) a performance and payment bond in the penal amount of $4,600,00.00 for the Channel Islands High School HVAC Replacement Project ("Channel Islands Project"); (3) a performance and payment bond in the penal amount of $612,000.00 for the Grossmont Union High School District Bus Maintenance Facility Project ("Grossmont Project"); (4) a performance and payment

bond in the penal amount of $1,873,000.00 for the Village 3 Elementary School District

Project ("Village Project"); (5) a performance and payment bond in the penal amount of

$104,335.00 for the Standley Middle School HVAC Project; (6) a performance and

payment bond in the penal amount of $739,804.00 for the Valhalla Locker Room

Modernization Project; and (7) a performance and payment bond in the penal amount of

$558,179.00 for the Eastlake High School Roof and HVAC Replacement Phase 5 Project

(collectively, the "Bonds").  PSS at No. 7; Linnaus Decl. ¶ 12; Doc. No. 35, Ex. B at 4.[5]

Eventually, Defendant SAI experienced cash flow problems which led to "eventual

bond claims."[6]  PSS at No. 8; Linnaus Decl. ¶ 13.  For example, to date, Ohio Casualty

has paid out $112,268.14 to claimants under the payment bond issued for the Channel

Islands Project.  PSS at Nos. 20–22; Linnaus Decl. ¶ 24; Doc. No. 25-2, Ex. I at 149.  No

claims have been paid out on any performance bonds.  In response to issues being raised

by obligees on multiple projects, and pursuant to its obligations under the Indemnity

Agreement, Ohio Casualty "commenced an investigation of" all the Bonded Projects.

PSS at Nos. 23–31; Linnaus Decl. ¶¶ 13–32; Agreement at 15.  On April 7, 2022,

pursuant to the Indemnity Agreement, Ohio Casualty made a demand upon Defendants to

provide collateral to cover its exposure on the Bonded Projects, which it calculated at that

point to total $3,500,000.00.  PSS at No. 33.  To date, Defendants have refused to post

collateral.[7]  PSS at No. 34.

---

[5] Exhibit B of the Linnaus Declaration was originally located at Doc. No. 25-2 at 24.  Because Plaintiff's original Exhibit B was in an illegible format, the Court directed the parties to file a supplemental, readable, version.  Doc. No. 34.  Accordingly, the parties jointly filed a supplemental Exhibit B on May 22, 2023.  Doc. No. 35.

[6] Defendants dispute the potential causes of SAI's financial difficulties.  PSS at No. 8.

[7] Defendants "dispute" Plaintiff's Facts 33 and 34 on the basis that Plaintiff's "collateral demanded exceeds the outstanding liabilities and amounts being held by [Plaintiff]."  PSS at Nos. 33–34.  This is not a valid basis for disputing these facts.  Defendants disagree with their potential liability, but do not dispute that Plaintiff demanded $3,500,000.00 in collateral and that Defendants have not posted the requested collateral.

Plaintiff initiated this action on April 18, 2022. Doc. No. 1. Plaintiff seeks to have Defendants indemnify Plaintiff for the money it has already paid to bond claimants along with associated investigation and defense costs, which Plaintiff calculates is $690,637.98. PSS at No. 36; Linnaus Decl. ¶ 36; *see* Ex. I. In addition, Plaintiff seeks specific performance of the Indemnity Agreement's collateral security provision in the amount of $4,820,000.00, which Plaintiff calculates is its current total potential exposure on the Bonds. PSS at No. 38; Linnaus Decl. ¶ 36.

## II. LEGAL STANDARD

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### III. REQUESTS FOR JUDICIAL NOTICE

Both parties have requested judicial notice of materials submitted in support of their respective positions regarding Plaintiff's motion for summary judgment pursuant to Federal Rule of Evidence 201. *See* Doc. Nos. 25-4; 27-3. Neither request is opposed.

Under Rule 201(b), the Court can take judicial notice of facts not subject to reasonable dispute, including the existence orders and decisions by other courts. Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Under Rule 201(d), the Court must take notice if requested by a party and if supplied with the necessary information. Fed. R. Evid. 201(d).

Plaintiff asks the Court to consider only one exhibit under the judicial notice doctrine: the cross-complaint by Great American Insurance Company in an action in state court entitled *Superior Air Inc. v. Fast Track Construction Corp., et al.*, County of Ventura, Case No. 56-2022-00566050-CU-BC-VTA. *See* Doc. No. 25-4 at 5–18. Defendants request judicial notice of the same cross-complaint, *see* Doc. No. 27-3 at 5–11, and the following two exhibits: (1) Ohio Casualty's answer to the above mentioned cross-complaint, *see* Doc. No. 27-3 at 13–23; and (2) a print-out of a search regarding the

status of Fast-Track Construction Corporation from the California Secretary of State's Online Business Search, *see* Doc. No. 27-3 at 25.

Because all three exhibits are proper for judicial notice, the Court **GRANTS** the parties' requests for judicial notice for all requested documents pursuant to Rule 201.

### IV. DISCUSSION

Plaintiff argues it is entitled to summary judgment or, in the alternative, partial summary judgment on each of the claims in its Complaint, including: (1) breach of contract (Indemnity Agreement) as to all Defendants; (2) declaratory relief as to all Defendants; (3) *quia timet* as to all Defendants; (4) specific performance as to all Defendants; and (5) statutory indemnity against SAI only.  *See* Doc. Nos. 1; 25-1 at 16–24.  The Court first addresses Plaintiff's claims for breach of the Indemnity Agreement and specific performance.

**A.    Objections**

As an initial matter, both parties object to various pieces of evidence provided by the opposing side.  *See* Doc. Nos. 27-5; 28-2; 28-3; 28-4.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c).  However, courts will consider evidence with content that would be admissible at trial even if the form of the evidence would be inadmissible.  *See Celotex*, 477 U.S. at 324; *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (admitting a diary in considering summary judgment where its contents were within the author's personal knowledge and could be admitted in several ways at trial despite a hearsay objection).

Objections such as lack of foundation, speculation, hearsay, and relevance are duplicative of the summary judgment standard itself.  *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006).  A court can award summary judgment only when there is no genuine dispute of material fact.  "Statements based on improper legal conclusions or without personal knowledge are not facts and can be

considered as arguments, not as facts, on summary judgment.  Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency." *Rose v. J.P. Morgan Chase, N.A.*, No. 12-CV-225-WBS-CMK, 2014 WL 546584, at *3 (E.D. Cal. 2014).  Accordingly, the Court **OVERRULES** the parties' objections because they rest on the grounds of speculation, hearsay, lack of personal knowledge, lack of foundation, and relevance.

**B.     Breach of Indemnity Agreement**

Ohio Casualty seeks to recover $690,637.98 for monies already expended in relation to the Bonds.  *See* Doc. No. 25-1 at 19.  Of this amount, $112,268.14 represents the amount already paid to settle claims.[8]  *See* Doc. No. 25-4 at 15.  Ohio Casualty cites to the following portions of the Indemnity Agreement to support its right to recover monies in the above amount:

> **4. Indemnity**: Indemnitors shall exonerate, hold harmless, indemnify, and keep [Ohio Casualty] indemnified from all liability for Loss.  Indemnitors shall pay [Ohio Casualty] for Loss promptly upon demand.  If [Ohio Casualty] makes any Loss payment, Indemnitors agree that in any accounting between [Ohio Casualty] and Principals, between [Ohio Casualty] and Indemnitors, or either or both of them, [Ohio Casualty] is entitled to recover from Indemnitors all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make sure disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by [Ohio Casualty] shall be prima facie evidence of the fact and amount of the liability to [Ohio Casualty].
>
> **1. Definitions**: **Loss**: [A]ny loss, fees, costs and expenses, including pre- and post-judgment interest at the maximum rate permitted by law, court costs,

---

[8] To date, Ohio Casualty has paid out two claims, including $35,000.00 to Captive-Aire Systems, Inc. and $77,268.14 to Trustees of the Southern California Pipe Trades Trust Funds in relation to the payment bond issued for the Channel Islands Project.  *See* PSS at Nos. 20–22; Linnaus Decl. ¶ 24; Doc. No. 25-2, Ex. I at 149.  The remaining amounts Ohio Casualty seeks to recover include expenses incurred in investigation and litigation related to the Bonds.  Ex. I at 149–151.

counsel fees, accounting, engineering and outside consulting fees, which [Ohio Casualty] may sustain or incur or otherwise determine in its sole and absolute discretion, by reason of: (a) a request for a Bond; (b) execution or procurement of a Bond, including any cost incurred by [Ohio Casualty] in fulfilling its obligations under any Bond; (c) the failure of Indemnitors to comply with any covenants or conditions of this [Indemnity] Agreement or Other Agreement; or (d) in enforcing any of the covenants and conditions of this [Indemnity] Agreement or Other Agreements.[9]

*See* Doc. No. 25-1 at 19; PSS at Nos. 4–5; Agreement ¶¶ 1, 4.

California law has long recognized the right of a surety, such as Ohio Casualty, to indemnification under the terms of a written indemnity agreement. *See, e.g.*, *Fid. & Deposit Co. of Md. v. Whitson*, 187 Cal. App. 2d 751, 756 (1960). "An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract." *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 968 (1993). To establish a valid claim for breach of an indemnity agreement under California law, Plaintiff must demonstrate the existence of an indemnity agreement, Plaintiff's performance under the agreement, breach of the agreement, and damages. *See Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

There is no dispute that Ohio Casualty and Defendants are parties to the Indemnity Agreement at issue. *See* PSS at No. 2; Doc. No. 27 at 8. Nor is there any dispute that the Indemnity Agreement provides Ohio Casualty with broad discretion to determine its losses and settle claims for payment. PSS at No. 5. Moreover, as noted above, the Indemnity Agreement states that "vouchers or other evidence of any . . . payments made by [Ohio Casualty] shall be prima facie evidence of the fact and amount of [Defendants']

---

[9] Numerous courts in other jurisdictions have upheld similar loss provisions. *See, e.g.*, *Transamerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 362 (6th Cir. 1968) (Paragraph VI granted to the Company "the right to pay, settle or compromise any expense, claim or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the Indemnitor's liability therefor to the Company").

liability to [Ohio Casualty]."   Agreement ¶ 4.   "Provisions in indemnity agreements . . . providing that vouchers and other evidence of payment shall be prima facie evidence of the propriety thereof, have been upheld as not against public policy and enforced by the courts."   *Great Am. Ins. Co. v. Roadway Eng'g Works, Inc.*, No. 16-CV-00070-WBS-SKO, 2016 WL 5157651, at *3 (E.D. Cal. Sept. 21, 2016) (quoting *Transamerica Ins. Co.*, 401 F.2d at 362 (6th Cir. 1968)).

Once the moving party shows that an indemnity agreement contains such a prima facie evidence clause, the burden shifts to the non-moving side to show that the amount claimed is incorrect (i.e., that Ohio Casualty did not pay what it claims to have paid) or that Ohio Casualty acted in bad faith in making such payments.   *See Travelers Cas. & Sur. Co. of Am. v. K.O.O. Constr., Inc.*, No. 16-CV-00518-JCS, 2016 WL 7324988, at *8 (N.D. Cal. Dec. 16, 2016) (concluding that "courts have routinely held that sort of burden shifting provision to be valid and enforceable in indemnity contracts" and collecting cases re: the same); *Cas. v. Dunmore*, No. 07-CV-02493-TLN-DB, 2016 WL 6611184, at *2 (E.D. Cal. Nov. 9, 2016) ("[a]ny alleged bad faith on behalf of a surety is a defense to liability that must be pleaded and proved by the defendants as opposed to constituting an element of a surety's case for breach of contract"); *see also Peter Culley & Assocs. v. Superior Court*, 10 Cal. App. 4th 1484, 1497 (1992), as modified on denial of reh'g (Dec. 16, 1992) ("The settlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable (e.g., unreasonable in amount, entered collusively or in bad faith, or entered by an indemnitee not reasonable in the belief that he or she had an interest to protect).").

To meet its burden of showing bad faith, an indemnitee must show that the surety engaged in "objectively unreasonable conduct" in paying the claims for which the surety seeks indemnity.   *See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 483 (1996).   "Good faith does not require perfection, or require that the surety had complete knowledge of the circumstances behind the claim before making its

settlement decision." *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, No. 10-CV-2503-AJB-DHB, 2012 WL 5928139, at *9 (S.D. Cal. Nov. 26, 2012) (internal citation and quotation marks omitted).  Rather, it depends on "whether the surety believed in good faith that it was *either* necessary or desirable for it to act to protect its interests as a surety, *or* whether there was no rational justification for the sureties [sic] actions." *Id.* (emphasis in original).

Here, Ohio Casualty submitted both a sworn statement from its Senior Surety Claims Counsel, Sonia Linnaus, as well as a spreadsheet summary detailing its losses in connection with resolving two claims on the Bonds and other costs associated with the following:

> (1) investigating the claims on the Bonds; (2) investigating and monitoring all the Projects to mitigate potential claims; (3) defending [Ohio Casualty] in the Fast Track Cross-Complaint [in the above mentioned state court action]; (4) enforcing [Ohio Casualty]'s rights under the Indemnity Agreement in the instant action. . . ; (5) retaining Matson Driscoll Damico LLP to administer the escrow account; (6) retaining [Watt, Tieder, Hoffar & Fitzgerald LLP] as legal counsel; and (7) paying consultants' expenses incurred with the investigation of the various bond claims.

Doc. No. 25-1 at 13; PSS at No. 36.  The spreadsheet includes check numbers and the dates that the checks were issued.  *See* Ex. I at 149–151.  The Court finds that this is sufficient evidence under the prima facie evidence clause to shift the burden to Defendants to prove that (1) the amount Ohio Casualty seeks is incorrect, or (2) that Ohio Casualty engaged in "objectively unreasonable conduct" in handling its obligations under the Indemnity Agreement.  *See Arntz Contracting Co.*, 47 Cal. App. 4th at 483.

First, Defendants do not technically argue that the amount Ohio Casualty seeks to have reimbursed is incorrect.  As stated above, Ohio Casualty seeks a total of $690,637.98 in reimbursement, which consists of $112,268.14 for two paid out claims on the Channel Islands Project payment bond, and $578,369.84 for expenses incurred in investigation, consultation, and litigation related to the Bonds.  Ex. I at 149–151.  Instead,

Defendants argue that they have not committed any breach because Ohio Casualty "possessed" and "controlled 'held funds' of [SAI] in the amount of $613,611.19." Doc. No. 27 at 9, 15. Specifically, Defendants contend that they have "already reimbursed" Ohio Casualty as to its payments of $77,268.14 and $35,000.00—totaling $112,268.14— on the Channel Islands Project payment bond claims "because [SAI] already provided [Ohio Casualty] with sufficient funds, so there are no outstanding reimbursements due." *Id.* Ohio Casualty replies that it "is not in 'total control' of bonded contract funds nor is it 'holding $613,611.19' but rather has participated *with* SAI in disbursements of funds to pay [other] vendors." Doc. No. 28 at 3 (emphasis in original). As stated above, the Court finds that Ohio Casualty provided sufficient evidence to establish its losses. In addition, the declaration of Ms. Linnaus establishes that Ohio Casualty has used the above-referenced "held funds" to pay vendors on other Bonded Projects, including the Village Lindbergh Projects.[10] Linnaus Decl. ¶ 32. Although Defendants take issue with Ohio Casualty's payment of $77,268.14, the evidence indicates that Ohio Casualty made the payment after Defendants had already been offered "several opportunities to resolve [the] claim." Doc. No. 27 at 13; Doc. No. 27-1, Decl. of John Woo in Supp. of Opp. to Mot. Summ. J. ("Woo Decl.") ¶ 9; Doc. No. 27-1, Ex. F at 38. In any event, as noted above, the Indemnity Agreement provides Ohio Casualty with broad discretion to determine its losses and to settle claims for payment. PSS at No. 5; Agreement ¶ 1 ("Loss"), ¶ 12. Furthermore, as to Defendants' dispute of the $35,000.00 payment, they only contend that it "was part of a larger shared settlement between [Ohio Casualty]" and another vendor's surety. *Id.*; PSS at No. 22; Woo Decl. ¶ 13. The Court finds Defendants'

---

[10] Relatedly, Defendants also argue the Indemnity Agreement is ambiguous as to the "language of what exactly is entailed in the 'full performance of [the Indemnity] Agreement' concerning the order and sequence in which [held] funds are applied." Doc. No. 27 at 24. The Court disagrees. Ambiguity exists when language is reasonably susceptible to more than one application to material facts. *California State Auto. Ass'n., Inter-Ins. Bureau v. Sup. Ct.*, 177 Cal. App. 3d 855, 859 (1986). "[F]ull performance of [the Indemnity] Agreement" is clearly in reference to Defendants' performance of their contractual obligations.

argument, and their evidence, insufficient to establish a genuine issue of material fact as to the amount that Ohio Casualty has already paid and seeks in reimbursement. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (holding that "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

Second, as to bad faith, Defendants claim that all of the "purported losses to attorneys, investigative firms, and others" are disputed. Doc. No. 27 at 28. However, Defendants only rely on the declaration of Defendant Jothilingam to argue that Defendants "did not ask for any of [Ohio Casualty's] interventions on the projects" and that "none of the projects themselves required [Ohio Casualty's] meddling." *Id.*; Doc. No. 27-2, Decl. of Vinod Jothilingam in Supp. of Opp. to Mot. Summ. J. ("Jothilingam Decl.") ¶ 15. To the extent Defendants rely on Mr. Jothilingam's declaration to argue Ohio Casualty's payments and expenses were made in bad faith and unreasonable, the Court finds that the declaration does not support such a reasonable finding by the trier of fact—it merely supports an inference that Defendants disagreed with Ohio Casualty's decisions regarding settlement and investigation of certain claims. As stated above, there is no dispute that the Indemnity Agreement provides Ohio Casualty with broad discretion to determine its losses and to settle claims for payment. PSS at No. 5; Agreement ¶ 1 ("Loss"), ¶ 12. As such, Defendants' opinion alone regarding Ohio Casualty's liability is insufficient to create a genuine issue of material fact. *Hansen*, 7 F.3d at 138; *see also FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1996) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

In sum, even viewing the evidence in Defendants' favor, there is no triable issue of material fact as to whether Ohio Casualty actually incurred the losses it claims or did not pay the claims in good faith. Therefore, the Court **GRANTS** Ohio Casualty's motion for summary judgment on its breach of the Indemnity Agreement claim. Accordingly,

Defendants are ordered to reimburse Plaintiff $690,637.98 for monies already expended in relation to the Bonds.

## C.     Specific Performance

Ohio Casualty also seeks specific performance of the collateral security provision in the Indemnity Agreement. *See* Doc. No. 25-1 at 24. Specifically, Ohio Casualty seeks no less than $4,820,000.00 in collateral, which represents its estimated pending and future liabilities related to the issuance of the Bonds. *Id.*; Linnaus Decl. ¶ 36. Ohio Casualty relies on the following provisions in the Indemnity Agreement to support its claim:

> **5. Collateral**: Upon an Event of Default or determination by [Ohio Casualty] that a potential Loss exists, [Ohio Casualty] may demand that Indemnitors deposit a sum of money equal to an amount determined by [Ohio Casualty], or collateral security of a type and value satisfactory to [Ohio Casualty], to cover the Loss, whether or not [Ohio Casualty] has: (a) established or increased any reserve; (b) made any Loss payment; or (c) received any notice of any claims therefor.

> **1. Definitions**: **Loss**: [A]ny loss, fees, costs and expenses, including pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering and outside consulting fees, which [Ohio Casualty] may sustain or incur or otherwise determine in its sole and absolute discretion, by reason of: (a) a request for a Bond; (b) execution or procurement of a Bond, including any cost incurred by [Ohio Casualty] in fulfilling its obligations under any Bond; (c) the failure of Indemnitors to comply with any covenants or conditions of this [Indemnity] Agreement or Other Agreement; or (d) in enforcing any of the covenants and conditions of this [Indemnity] Agreement or Other Agreements.

*See* Doc. No. 25-1 at 22; PSS at Nos. 6, 34; Agreement ¶¶ 1, 5.

Despite the fact that there is often no actual monetary loss at the time specific performance of a collateral security provision is sought, a court can nevertheless award the equitable relief. *See, e.g.*, *Milwaukie Construction Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 968 (9th Cir. 1966) (affirming award of collateral security to surety); *General*

*Ins. Co. of Am. V. Singleton*, 40 Cal. App. 3d 439, 442 (1974) (awarding collateral security under a bond agreement). In fact, "[s]ureties are ordinarily entitled to specific performance of collateral security clauses" because "[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) (internal citation omitted). Moreover, specific performance can be awarded on a motion for summary judgment. *See U.S. Fidelity and Guar. Co. v. Stanley Contracting, Inc.*, 303 F. Supp. 2d 1169, 1175 (D. Or. 2004) (granting summary judgment and awarding specific performance of collateral security provision in an amount agreed upon by the parties).

Ohio Casualty is mainly seeking collateral security for the following: (1) potential liabilities on the payment and performance bonds associated with the Grossmont Project; (2) a pending cross-complaint in state court against it by one of the sureties for a subcontractor on the Channel Islands Project; (3) additional potential liabilities related to the bonds for the Channel Islands Project; and (4) outstanding costs associated with defending the instant action and the above-referenced state court action. *See* Doc. No. 25-1 at 9–14; Linnaus Decl. ¶¶ 36–38. According to Ohio Casualty, it estimates that its total potential liability on the Bonds is $6,820,000.00, but it is seeking only $4,820,000.00 as collateral security because it "recognizes that SAI has asserted an affirmative claim in the litigation involving the Channel Islands Project and that there may be various other defenses available to SAI" and itself that may reduce Ohio Casualty's liability by $2,000,000.00. PSS at No. 38; Linnaus Decl. ¶ 38.

Defendants do not contest the validity of the collateral security provision. Rather, Defendants contest the estimated amount of total potential liability.[11] But Defendants

---

[11] For example, Defendants dispute the amount of potential liability for the Channel Islands Project, arguing that the amount is "impossible" because the "penal sum of the bond is [only] $4,600,000.00 which caps [Ohio Casualty's total claim liability." PSS at No. 25. However, this is not true. As the declaration of Defendant Jothilingam makes clear, there are payment *and* performance bonds on the Channel Islands Project which have penal sums of $4,600,000.00 *each*. *See* Jothilingam Decl. ¶ 7; *see also* Doc. No. 27-2 at 6, 10.

offer no evidence to that end, whereas Ohio Casualty offers the declaration of its senior claims counsel.  Linnaus Decl. ¶¶ 36–38.  In any event, the exact amount sought by Ohio Casualty under the collateral security provision is of no significant consequence; by ordering specific performance, the Court is only telling the parties to do what they contracted to do.  In this case, Defendants agreed that if Ohio Casualty asked for collateral security, they would provide it.  And a surety is allowed to seek security against future loss so long as the surety's beliefs are reasonable.[12]  *See Milwaukie Const. Co.*, 367 F.2d 964, 944 (internal citation omitted).

Although Ohio Casualty's full liability on the bonds has not yet been determined, the fact that it may be liable for the full penal amounts—namely, on the Channel Islands Project bonds—for pending and potential bond claims is sufficient to entitle Ohio Casualty to the specific performance it seeks.  *See Amer. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 299, 302 (2d Cir. 1989) ("Having bargained for collateral security and having failed to receive it," plaintiff's claim for specific performance was ripe, even though the surety's indemnity liability for the full amount of the bond was "speculative").  Moreover, Paragraph Five of the Indemnity Agreement is sufficiently clear and definite that upon demand, "an amount determined by [Ohio Casualty]" to cover any loss or potential loss shall be deposited with Ohio Casualty.  Therefore, because Ohio Casualty may be liable for the full penal sums on the Bonds, specifically the Channel Islands Project bonds where there are current claims being investigated and a lawsuit pending, the Court finds the collateral amount requested by Ohio Casualty to be

---

[12] As to Defendants' argument that Ohio Casualty "frustrated [SAI]'s expectations of its surety" and that Ohio Casualty mishandled its issuing of bonds related to the Channel Islands Project which led to its "unreasonable" collateral demand, the Court is not convinced.  The Court notes that "a surety bond is not an insurance policy, and '. . . it is not the duty of the surety to protect the principal as if the principal were an insured under an insurance policy.'"  *Arntz*, 47 Cal. App. 4th at 482–483 (internal citation omitted).

reasonable.[13]  *See Safeco*, 739 F.2d at 433–34 (finding specific performance should be granted after a demand on the bonds has been made, regardless of whether the surety has paid out on the bond); *Am. Contractors Indem. Co. v. Bigelow*, 09-CV-8108-HRH, 2011 WL 5546052, at *12 (D. Ariz. Apr. 11, 2011) ("As long as plaintiff remains at risk for the full penal sums of the bonds, defendants must post the $3,331,399.00 in additional collateral that plaintiff has demanded.").

Accordingly, the Court **GRANTS** Ohio Casualty's motion for specific performance.  As such, Defendants shall post collateral security in an amount no less than $4,820,000.00.  However, as attested to in the Linnaus Declaration, any amounts not expended after all claims have been settled must be returned to Defendants.  Linnaus Decl. ¶ 37; *see also Safeco*, 739 F.2d at 433 (explaining that a surety that has demanded funds pursuant to a collateral security agreement must either use those funds for payment on the bonds or else return the funds to the indemnitors).

**D.    Remaining Claims**

Plaintiff's Complaint and motion for summary judgment contain five claims: (1) breach of contract; (2) declaratory relief; (3) *quia timet*; (4) specific performance; and (5) statutory indemnity.  The Court construes Claims 2, 3, and 5 as seeking either

---

[13] To the extent Defendants argue bad faith or breach of the implied covenant of good faith and fair dealing in regard to Ohio Casualty's collateral demand, the Court is not persuaded.  *See* Doc. No. 27 at 21–22.  Here, there is no evidence Ohio Casualty acted in bad faith by seeking to enforce the collateral security provision.  Even if Ohio Casualty does not believe it currently is obligated to pay on the Bonds, the collateral security provision applies to potential losses—and pending claims on the Channels Islands Project bonds and the pending cross-claim in the state court suit are clearly potential losses.  Moreover, the Court notes that Defendants have not brought any counterclaim for breach of the implied covenant of good faith and fair dealing.  And, in any event, the Indemnity Agreement gives Ohio Casualty the authority to settle claims against it in its sole discretion and to determine its losses and potential losses, and that is what Ohio Casualty has done here.  Although it applies to surety contracts, the doctrine of the implied covenant of good faith and fair dealing cannot be used to create implicit rights that contradict the express terms of the agreement.  *Carma Developers (Cal.), Inc. v. Marathon Development Cal.*, 2 Cal. 4th 342, 374 (1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement.").

duplicative remedies[14] or alternative relief to Defendants' breach of contract and specific performance claims. Because the Court has found that summary judgment is appropriate on Plaintiff's first and fourth claims, Plaintiff's remaining claims are rendered moot. As such, the Court **DENIES** the remainder of Plaintiff's motion and **DISMISSES** Plaintiff's claims for declaratory relief, *quia timet*, and statutory indemnity as moot.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion for summary judgment with respect to the claims alleged in the Complaint. Specifically, the Court:

1. **GRANTS** Plaintiff's motion with respect to its first cause of action for breach of the Indemnity Agreement. Accordingly, Defendants must reimburse Plaintiff $690,637.98 for monies already expended in relation to the Bonds.

2. **GRANTS** Plaintiff's motion with respect to its fourth cause of action for specific performance. Accordingly, Defendants must post collateral security in an amount no less than $4,820,000.00. Plaintiff shall return to Defendants any unused portion of the collateral.

3. **DENIES** the remainder of Plaintiff's motion and **DISMISSES** Plaintiff's remaining claims as moot.

The Court further **DIRECTS** the Clerk of Court to enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated:  June 6, 2023

HON. MICHAEL M. ANELLO
United States District Judge

---

[14] For example, Plaintiff's *quia timet* claim is duplicative of its specific performance claim. *Quia timet* (literally, "because he fears") gives a court the equitable power, at the request of a surety, to seize funds owed and apply them to a debt if the surety can show that "the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid[,] the surety will become liable." *Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954). Thus, this claim must be dismissed as moot because *quia timet* is not an independent ground for recovery and Plaintiff cannot obtain the same security twice.